In the
United States Court of Appeals
for the Ninth Circuit

---

Nos. 12-35238, 12-35319

---

OBSIDIAN FINANCE GROUP, LLC, *ET AL.*,

Plaintiffs-Appellees and Cross-Appellants,

v.

CRYSTAL COX,

Defendant-Appellant and Cross-Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
No. 3:11-cv-00057-HZ
The Honorable Marco A. Hernandez

---

**OPENING BRIEF OF DEFENDANT-APPELLANT AND CROSS-
APPELLEE CRYSTAL COX**

---

Eugene Volokh
Mayer Brown LLP
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu
*Attorney for Defendant-
Appellant/Cross-Appellee*

# TABLE OF CONTENTS

Table of Contents.................................................................... i

Table of Authorities ............................................................ iii

Jurisdictional Statement ........................................................ 1

Statement of Issues Presented for Review .................................... 1

Statement of the Case ........................................................... 2

Statement of Facts............................................................... 2

Summary of Argument ......................................................... 4

Standard of Review.............................................................. 6

Argument ........................................................................ 7

I.   Defendant Is Entitled to a New Trial Under *Gertz v. Robert Welch, Inc.* ........................................................................ 7

   A.   *Gertz* Applies Equally to All Who Speak to the Public, Regardless of Whether They Are Members of the Institutional Press................................................................ 7

   B.   Defendant's Allegations Constitute Speech on Matters of Public Concern............................................................ 15

      1.   Publicly Made Allegations of Fraud by a Court-Appointed Trustee Constitute Speech on Matters of Public Concern ......... 15

      2.   Allegations of Fraud by a Court-Appointed Trustee Do Not Lose Their Public Concern Status Even if They Deal with a Specific Incident That Has Not Yet Been Publicly Discussed .. 18

C.  This Court Has Stated That the *Gertz* Requirement of a Showing of Negligence Applies Even in Private Concern Cases ................... 22

II.  Defendant Is Entitled to a New Trial Under *New York Times v. Sullivan* ................................................................................. 26

III. Defendant's First Amendment Arguments Have Been Sufficiently Preserved for Review, and in Any Event Defendant Should Prevail Under Plain Error Review ..................................................... 31

IV. The Defendant Is Entitled to a New Trial, or at Least to Remittitur, Because the Damages Award Was Not Supported by the Evidence...... 38

V.  The First Amendment Protections Discussed Above Leave Libel Plaintiffs with Substantial Avenues of Redress for Defamation............ 40

Conclusion ................................................................................. 42

# TABLE OF AUTHORITIES

## Cases

*Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290 (11th Cir. 2008) .................................................................. 15, 20, 21

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600 (6th Cir. 2005) ................................. 25

*Avins v. White*, 627 F.2d 637 (3d Cir. 1980) ................................ 10

*Balboa Island Village Inn, Inc. v. Lemen*, 156 P.3d 339 (Cal. 2007) ........................................................................... 41

*Bandelin v. Pietsch*, 563 P.2d 395 (Idaho 1977) ................................... 28, 29

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ................................. 9, 13

*Boule v. Hutton*, 328 F.3d 84 (2d Cir. 2003) ......................................... 15, 19

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ................................. 24

*Branzburg v. Hayes*, 408 U.S. 665 (1972).................................... 15

*Brown v. Avemco Inv. Corp.*, 603 F.2d 1367 (9th Cir. 1979)...................... 32

*Citizens United v. FEC*, 130 S. Ct. 876 (2010) ................................. 8, 13, 14

*City of San Diego v. Roe*, 543 U.S. 77 (2004)............................... 25

*Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999) .................................... 38

*Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991)......................... 9

*Davis v. Schuchat*, 510 F.2d 731 (D.C. Cir. 1975)....................... 10

*Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183 (9th Cir. 2005) .............................................................. 32, 34, 35, 36

*Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983 (9th Cir. 2009) ................................................................. 6

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) ........................................................... *passim*

*Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249 (9th Cir. 1997) ..................................................................... 31

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978) ............. 9, 10, 13

*Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144 (2d Cir. 2000) .................................................................. *passim*

*Flatley v. Mauro*, 139 P.3d 2 (Cal. 2006).................................... 42

*Florida Star v. B.J.F.*, 491 U.S. 524 (1989) .......................... 19, 30

*Garcia v. Bd. of Educ.*, 777 F.2d 1403 (10th Cir. 1985) ............... 10

*Gardner v. Martino*, 563 F.3d 981 (9th Cir. 2009) ............... *passim*

*Garrison v. Louisiana*, 379 U.S. 64 (1964) ........................... *passim*

*Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996) ................... 6

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)................. *passim*

*HBO v. Harrison*, 983 S.W.2d 31 (Tex. App. 1998)............ 27, 28

*Henry v. Collins*, 380 U.S. 356 (1965) ........................ 9, 13, 29, 30

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) ........................ 20

*IBP Confidential Bus. Documents Litig., In re*, 797 F.2d 632 (8th Cir. 1986)........................................................ 10

*Kids Creek Partners, L.P., In re*, 248 B.R. 554 (Bankr. N.D. Ill. 2000), *aff'd*, 2000 WL 1761020 (N.D. Ill. Nov. 30, 2000) .................... 27

iv

*Kramer v. Thompson*, 947 F.2d 666 (3d Cir. 1991) (en banc) .................... 41

*Lerman v. Flynt Distributing Co., Inc.*, 745 F.2d 123 (2d Cir. 1984) ......................................................................................... 25

*Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096 (9th Cir. 1986) ......................................................................................... 27

*Lovell v. City of Griffin*, 303 U.S. 444 (1938) ...................................... *passim*

*Loya v. Desert Sands Unified School Dist.*, 721 F.2d 279 (9th Cir. 1983) ............................................................. 31, 32, 35, 36

*Manual Enterprises, Inc. v. Day*, 370 U.S. 478 (1962) .......................... 24, 25

*Manufactured Home Communities, Inc. v. County of San Diego*, 544 F.3d 959 (9th Cir. 2008) ....................................................... 17, 18, 19

*McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003) .................................... 12

*Medtronic, Inc. v. White*, 526 F.3d 487 (9th Cir. 2008) .............................. 35

*Menken v. Emm*, 503 F.3d 1050 (9th Cir. 2007) ........................................ 42

*Metabolic Research, Inc. v. Ferrell*, 2012 WL 2215834 (9th Cir. June 18, 2012) ..................................................................... 42

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ................................... 14

*Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003) ............. 32, 36

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) .......................... *passim*

*New York v. Ferber*, 458 U.S. 747 (1982) .............................................. 24, 25

*Newcombe v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998).............. *passim*

*Nike, Inc. v. Kasky*, 539 U.S. 654 (2003).................................................... 30

*Obsidian Finance Group v. Cox*, 812 F. Supp. 2d 1220 (D. Or. 2011) ................................................................................... 2, 39

*Oliver v. Burlington Northern, Inc.*, 531 P.2d 272 (Or. 1975) ..................... 38

*Overstreet v. United Brotherhood of Carpenters & Joiners,
Local Union No. 1506*, 409 F.3d 1199 (9th Cir. 2005) ........................... 41

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) ....... 14, 16, 30

*Press, Inc. v. Verran*, 569 S.W.2d 435 (Tenn. 1978) .................................. 27

*Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) ................................... 11, 12, 15

*Silvester v. American Broadcasting Companies, Inc.*, 839 F.2d
1491 (11th Cir. 1988) ........................................................................ 15, 19

*Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304 (11th
Cir. 1990) ................................................................................................. 38

*Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d
1398 (9th Cir. 1989), *overruled as to other matters by
Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) (en
banc) ........................................................................................................ 31

*Smith v. California*, 361 U.S. 147 (1959) ................................................... 24

*Smith v. United States*, 431 U.S. 291 (1977) .............................................. 23

*Snyder v. Phelps*, 580 F.3d 206 (4th Cir. 2009), *aff'd*, 131 S. Ct.
1207 (2011) .............................................................................................. 10

*Tory v. Cochran*, 544 U.S. 734 (2005) ....................................................... 41

*United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011) .................... 24

*United States v. Brown*, 223 Fed. Appx. 722 (9th Cir. 2007) ..................... 37

*United States v. Garcia-Rivera*, 353 F.3d 788 (9th Cir. 2003) ............. 36, 37

*United States v. Sykes*, 658 F.3d 1140 (9th Cir. 2011) ................................ 36

*United States v. United States District Court*, 858 F.2d 534 (9th
Cir. 1988) ........................................................................................... 24, 25

vi

*Virginia v. Black*, 538 U.S. 343 (2003) ........................................................ 24

*von Bulow ex rel. Auersperg v. von Bulow*, 811 F.2d 136 (2d
    Cir. 1987) ......................................................................................... 11, 15

*Weeks v. Bayer*, 246 F.3d 1231 (9th Cir. 2001)........................................... 15

*Wheeler v. Green*, 593 P.2d 777 (Or. 1979) .............................................. 4, 30

*Willing v. Mazzocone*, 393 A.2d 1155 (Pa. 1978) ....................................... 41

*Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991) .............. 24, 25

**Statutes**

11 U.S.C. § 1106(a) ...................................................................................... 27

11 U.S.C. § 704(a) ........................................................................................ 27

FED. R. CIV. P. 51(c)(1)................................................................................. 31

OR. REV. STAT. § 163.275.............................................................................. 42

OR. REV. STAT. § 166.715.............................................................................. 42

**Articles, Books, and Restatement Sections**

1 RODNEY A. SMOLLA, LAW OF DEFAMATION § 3:20 (2d ed.
    2012) ..................................................................................................... 21

Eugene Volokh, *Freedom for the Press as an Industry, or for
    the Press as a Technology? From the Framing to Today*, 160
    U. PA. L. REV. 459 (2012)........................................................................ 10

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over this matter under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states. This Court has jurisdiction under 28 U.S.C. § 1291 because the appeal is from a final order—the Mar. 27, 2012 denial of defendant's motion for a new trial—that disposes of all parties' claims, 1 ER 1. The appeal is timely under FED. R. APP. P. 4(a)(1)(A) because the Notice of Appeal was filed Mar. 30, 2012, 2 ER 48.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

(1) Whether, even if plaintiffs are treated as private figures, defendant is entitled to a new trial in which the jury is instructed—consistently with *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)—(a) that it could hold defendant liable for proven compensatory damages only if it found that defendant acted negligently, and (b) that it could hold defendant liable for presumed damages only if it found that defendant acted with "actual malice."

(2) Whether plaintiffs, a court-appointed bankruptcy trustee and the partnership through which he operates, are properly treated as special-purpose public officials, so that the defendant is entitled to a new trial in which the jury is instructed—consistently with *New York Times Co. v. Sullivan*, 376

1

U.S. 254 (1964)—that it could hold defendant liable for presumed damages only if it found that defendant acted with "actual malice."

(3) Whether a new trial—or at least remittitur—is also required because the evidence presented to the jury did not support a conclusion that plaintiffs suffered $2.5 million in damages (whether proven or presumed) from the one post that this Court ruled could form the basis for plaintiffs' lawsuit.

## STATEMENT OF THE CASE

Kevin Padrick and Obsidian Finance Group, LLC sued Crystal Cox, claiming that Cox libeled them. The jury rendered a verdict for Padrick and Obsidian. Cox moved for a new trial, arguing that the district judge had improperly instructed the jury, and that the jury verdict was excessive. The district court denied the motion for new trial.

## STATEMENT OF FACTS

Kevin Padrick and Obsidian Finance Group, LLC sued Crystal Cox in district court, claiming that Cox libeled them in a series of blog posts. *Obsidian Finance Group v. Cox*, 812 F. Supp. 2d 1220 (D. Or. 2011). On Aug. 23, 2011, the district court held that nearly all of defendant's posts criticizing plaintiffs were constitutionally protected opinion, and that plaintiffs could proceed based only the Dec. 25, 2010 bankruptcycorruption.com post. *Id.* at 1234–39.

2

On Nov. 30, 2011, the district court decided what legal rules would govern the trial, and would be reflected in the jury instructions. The court noted that, before trial, "Defendant argue[d] that under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), plaintiffs are 'public figures' and as such, they must prove by clear and convincing evidence that defendant published the defamatory statements with 'actual malice,' meaning with knowledge that the statements were false or with a reckless disregard of whether they were false or not." Nov. 30 Op. at 5, 1 ER 39. And the court stated that defendant also argued that "plaintiffs cannot recover damages without proof that defendant was at least negligent and may not recover presumed damages absent proof of 'actual malice.' *Gertz*, 418 U.S. at 347." *Id.* at 9, 1 ER 43.

The district court rejected both these arguments, and at trial instructed the jury accordingly, thus allowing the jury to impose presumed damages without any showing of negligence or "actual malice." Trial Tr. 199, 2 ER 53 (reading Jury Instructions at 10, 2 ER 50) (instructing the jury about the elements of the defamation cause of action, without including any requirement of a showing of negligence or "actual malice"); *id.* (reading Jury Instructions at 11, 2 ER 51) (instructing the jury that "Defendant's knowledge of whether the statements at issue were true or false, and defendant's intent or purpose in publishing those statements, are not elements of the claim and are not rel-

evant to a determination of liability"); Trial Tr. 200, 2 ER 54 (reading Jury Instructions at 13, 2 ER 52) (instructing the jury that it may award presumed damages, without including any requirement of a showing of "actual malice"). The trial court did not instruct the jury about punitive damages, presumably because such damages are unavailable in Oregon libel cases. *Wheeler v. Green*, 593 P.2d 777, 789 (Or. 1979). The jury returned a verdict of $2.5 million against defendant, without indicating how much of this was proven compensatory damages and how much was presumed damages.

On Jan. 4, 2012, Cox filed a motion for a new trial, which the district court denied on Mar. 27, 2012, in a written opinion. Mar. 27 Op., 1 ER 1.

## SUMMARY OF ARGUMENT

Defendant asks that the Court grant a new trial, for three reasons.

First, even if plaintiffs are treated as private figures, the jury should still have been instructed—consistently with *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)—

(1) that it could hold defendant liable for proven compensatory damages only if it found that defendant acted negligently, and

(2) that it could hold defendant liable for presumed damages only if it found that defendant acted with "actual malice."

4

*Gertz* applies equally to all defendants who speak to the public, regardless of whether they are members of the institutional press. While the second *Gertz* requirement—that "actual malice" must be shown for presumed damages— applies only to speech on matters of public concern, allegations of criminal fraud against the government by a court-appointed bankruptcy trustee constitute speech on matters of public concern. And a Ninth Circuit decision, *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 694 n.4 (9th Cir. 1998), states that the first *Gertz* requirement (that negligence must be shown for compensatory damages) applies to speech on matters of private concern as well as to speech on matters of public concern.

Second, because plaintiff Kevin Padrick was a court-appointed bankruptcy trustee, he should be treated akin to a public official with regard to claims about his performance of his duties. The rule of *New York Times v. Sullivan* therefore applies, and the jury should have been instructed consistently with that rule.

Third, a new trial—or, at least remittitur—is also required because the evidence presented to the jury did not support a conclusion that plaintiffs suffered $2.5 million in damages (whether proven or presumed) from the one post that the district court ruled could form the basis for plaintiffs' lawsuit.

5

## STANDARD OF REVIEW

This Court "review[s] de novo whether a jury instruction misstates the law." *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) (internal quotation marks omitted). The decision to deny remittitur or a new trial based on an allegedly excessive jury verdict is reviewed for abuse of discretion. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 435 (1996).

Defendant Cox's arguments that her speech was entitled to First Amendment protections were raised in her Trial Memorandum at 1–6, 2 ER 63–68. *See* Nov. 30 Op. at 5, 1 ER 39 (stating that "Defendant argues that under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), plaintiffs are 'public figures' and as such, they must prove by clear and convincing evidence that defendant published the defamatory statements with 'actual malice'"); *id.* at 9, 1 ER 43 (stating that "Defendant next argues that she is 'media' and thus, plaintiffs cannot recover damages without proof that defendant was at least negligent and may not recover presumed damages absent proof of 'actual malice.' *Gertz*, 418 U.S. at 347 . . . ."). Part III of the Argument below explains why this was sufficient despite defendant's not having objected at trial to the refusal to give an instruction.

## ARGUMENT

### I.   Defendant Is Entitled to a New Trial Under *Gertz v. Robert Welch, Inc.*

Even if plaintiffs are private figures, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), requires that, at least, (a) defendant should not have been held liable without a jury finding that she was negligent, and (b) defendant should not have been held liable for presumed damages without a jury finding of "actual malice" on her part. Because the jury instructions did not require the jury to make such findings, the district court decision should be reversed.

### A. *Gertz* Applies Equally to All Who Speak to the Public, Regardless of Whether They Are Members of the Institutional Press

Even if plaintiffs were not public figures, defendant was still entitled to the protections of *Gertz*.

The Supreme Court has held that the First Amendment applies equally to the institutional press and to others who speak to the public:

> "We have consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers." [*Austin v. Michigan Chamber of Commerce*, 494 U.S. 652]*, at 691 (SCALIA, J., dissenting) (citing [*First Nat'l Bank of Boston v.*] *Bellotti,* 435 U.S. [765], at 782); see *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 784 (1985) (Brennan, J., joined by Marshall, Blackmun, and STEVENS, JJ., dissenting); *id.,* at 773 (White, J., concurring in judgment).

7

*Citizens United v. FEC*, 130 S. Ct. 876, 905 (2010). Moreover, the Court supported this holding by relying on—and thus endorsing—five Justices' opinions in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749 (1985), which expressly concluded that "in the context of defamation law, the rights of the institutional media are no greater and no less than those enjoyed by other individuals or organizations engaged in the same activities." *Id.* at 784 (Brennan, J., dissenting); *id.* at 773 (White, J., concurring in the judgment) (expressly endorsing Justice Brennan's view on this point).

This equal treatment of speakers regardless of whether they are members of the "institutional media" is thus not only the view of five Justices in *Dun & Bradstreet* (specifically in the context of defamation law), but also of the majority in *Citizens United*. Indeed, the *Citizens United* majority specifically mentioned that its "reject[ion]" of any greater protection for the institutional press over other speakers stemmed partly from the realities of the Internet age: "With the advent of the Internet and the decline of print and broadcast media, moreover, the line between the media and others who wish to comment on political and social issues becomes far more blurred." 130 S. Ct. at 905–06.

Indeed, the principle that the institutional press and others who speak to the public have the same First Amendment rights has been applied by the

8

Court in case after case since the 1930s. *See, e.g.*, *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938) (stating that the freedom of the press "embraces pamphlets and leaflets" as well as "newspapers and periodicals," and indeed "comprehends every sort of publication which affords a vehicle of information and opinion"); *New York Times v. Sullivan* (applying the same First Amendment protection to the newspaper defendant and to the individual defendants who placed an advertisement in the newspaper); *Garrison v. Louisiana*, 379 U.S. 64 (1964) (applying the rule of *New York Times v. Sullivan* to a speaker who was an elected district attorney and not a member of the institutional press); *Henry v. Collins*, 380 U.S. 356, 357 (1965) (applying the rule of *New York Times v. Sullivan* to an arrestee who issued a statement alleging that his arrest stemmed from "'a diabolical plot'"); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 782 n.18 (1978) (rejecting the "suggestion that communication by corporate members of the institutional press is entitled to greater constitutional protection than the same communication by [non-institutional-press businesses]"); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 665–67, 669 (1991) (concluding that the press gets no special immunity from laws that apply to others, including laws—such as copyright law—that target communication); *Bartnicki v. Vopper*, 532 U.S. 514, 525 & n.8 (2001) (concluding that, in deciding whether defendants could be held liable under

9

a statute banning the redistribution of illegally intercepted telephone conversations, "we draw no distinction between the media respondents and [the non-institutional-media respondent]," and citing *New York Times v. Sullivan* and *First Nat'l Bank of Boston* as support for that conclusion); Eugene Volokh, *Freedom for the Press as an Industry, or for the Press as a Technology? From the Framing to Today*, 160 U. Pa. L. Rev. 459 (2012) (citing more sources on this, from the Framing era to now).

All the federal circuits that have considered the question have likewise held that the First Amendment defamation rules apply equally to the institutional press and to others who speak to the public. *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 149 (2d Cir. 2000); *Avins v. White*, 627 F.2d 637, 649 (3d Cir. 1980); *Snyder v. Phelps*, 580 F.3d 206, 219 n.13 (4th Cir. 2009), *aff'd*, 131 S. Ct. 1207 (2011); *In re IBP Confidential Bus. Documents Litig.*, 797 F.2d 632, 642 (8th Cir. 1986); *Garcia v. Bd. of Educ.*, 777 F.2d 1403, 1410 (10th Cir. 1985); *Davis v. Schuchat*, 510 F.2d 731, 734 n.3 (D.C. Cir. 1975). As the Second Circuit put it in *Flamm*, "a distinction drawn according to whether the defendant is a member of the media or not is untenable," even in private-figure cases. 201 F.3d at 149. And while this Court has not specifically discussed the question, it has indeed cited *Gertz* even where a non-institutional-press speaker was involved. *See Newcombe v. Adolf*

10

*Coors Co.*, 157 F.3d 686, 694 n.4 (9th Cir. 1998) (citing *Gertz* for the proposition that a "private person who is allegedly defamed" must show "that the defamation was due to the negligence of the defendant," in a case where the lead defendant was not a member of the institutional media).

This Court's reasoning with regard to the First Amendment newsgatherer's privilege is also instructive for First Amendment cases more generally. In *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993), this Court considered whether the newsgatherer's privilege applies only to the institutional press, or also extends to book authors. Plaintiffs argued that a person who was writing a book "has no standing to invoke the journalist's privilege because book authors are not members of the institutionalized print or broadcast media." *Id.* at 1293.

But this Court expressly rejected that view. It found "persuasive" "the Second Circuit's reasoning" that "it makes no difference whether '[t]he intended manner of dissemination [was] by newspaper, magazine, book, public or private broadcast medium, [or] handbill' because '"[t]he press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion."'" *Id.* (quoting *von Bulow ex rel. Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987), which in turn quoted *Lovell v. City of Griffin*). And this Court concluded that, "[h]ence, the criti-

11

cal question for deciding whether a person may invoke the journalist's privilege is whether she is gathering news for dissemination to the public," *id.*, not whether she is working for the institutional media.

The same reasoning applies to the First Amendment defamation law rules, which are even more clearly secured by the First Amendment precedents than are the First Amendment journalist privilege rules. *See, e.g., McKevitt v. Pallasch*, 339 F.3d 530, 532 (7th Cir. 2003) (concluding that the Supreme Court's First Amendment precedents do not in fact recognize a newsgatherer's privilege). Anyone who—like defendant—is disseminating material to the public is fully protected by the First Amendment precedents, whether or not she is a "member[] of the institutionalized print or broadcast media."

The Supreme Court cases cited here also do not turn on whether the defendants are trained as journalists, are affiliated with news entities, engage in editing, fact-checking, or conflict of interest disclosure, keep careful notes, promise confidentiality, go beyond just assembling others' writings, or try to get both sides of a story. (These are all factors that the district court treated as relevant to deciding whether a speaker is a member of the "media." Nov. 30 Op. at 9, 1 ER 43; Mar. 27 Op. at 13–14, 1 ER 13–14.) Nor do they turn on any offers that a defendant may have made after she received a demand

12

letter, a factor that the district court identified in the Mar. 27 opinion but not in the initial Nov. 30 opinion. Nov. 30 Op. at 9, 1 ER 43; Mar. 27 Op. at 14, 1 ER 14. The First Amendment fully protects the partisan polemicists in *Citizens United*, the political activist in *Bartnicki*, the self-interested bank in *First Nat'l Bank of Boston*, the conspiracy-theory-weaving arrestee in *Henry*, the elected district attorney in *Garrison*, the activists in *New York Times v. Sullivan*, and the Jehovah's Witness pamphleteer in *Lovell*. It equally fully protects defendant.

It is true that *Gertz* spoke of protections offered to "'publishers'" and "'broadcasters.'" Mar. 27 Op. at 15, 1 ER 15. But this was simply because the facts of that case happened to involve an institutional publisher. *New York Times v. Sullivan* offers a helpful analogy: The opinion spoke of the importance of avoiding a chilling effect on "newspaper[s]," 376 U.S. at 266, 278, 294, 295, and "broadcaster[s]," *id.* at 294, even though it enunciated a rule that applies equally to all speakers, including the defendant clergymen in *New York Times v. Sullivan* itself, *id.* at 256, 282–84, the district attorney in *Garrison*, 379 U.S. at 64–67, and the individual speaker in *Henry*, 380 U.S. at 356. *Citizens United*—and the five Justices' statements in *Dun & Bradstreet*—rightly treated the Court's libel precedents as enunciating a general rule applicable to all speakers.

Any uncertainty about the subject that was flagged in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 n.6 (1990), *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 779 n.4 (1986), and a few similar earlier cases has now been cleared up by *Citizens United*, and by the *Citizens United* endorsement of the five Justices' views in *Dun & Bradstreet*. And, as noted above, the other Circuits that have considered this question in the context of defamation law (and this Circuit, in considering the question in the context of the newsgatherer's privilege) agree that First Amendment protections do not turn on whether the speaker is a member of the institutional media.

The district court's Mar. 27 opinion suggests that this is a different argument than the one that defendant Cox raised before trial, Mar. 27 Op. at 14, 1 ER 14, and that Cox's pretrial argument was "that because defendant was 'media,' she was entitled to certain First Amendment protections, including requiring plaintiffs to establish liability by proving that defendant acted with some degree of fault, whether it be negligence or 'actual malice.'" *Id.* at 13, 1 ER 13. But Cox's argument, Trial Mem. 1–6, 2 ER 63–68, was that solo online speakers are as much a part of the "media" and the "press" protected by the First Amendment as are members of the institutional press. *Cf. Lovell*, 303 U.S. at 452 (stating that "the press in its historic connotation comprehends every sort of publication which affords a vehicle of information and

14

opinion"); *Branzburg v. Hayes*, 408 U.S. 665, 704 (1972) (quoting and endorsing *Lovell* on this point); *Shoen*, 5 F.3d at 1293 (quoting *von Bulow*, 811 F.2d at 144, which in turn quoted *Lovell* on this point). This is the same argument that was made in the motion for a new trial, and that is being made in this brief.

### B. Defendant's Allegations Constitute Speech on Matters of Public Concern

### 1. Publicly Made Allegations of Fraud by a Court-Appointed Trustee Constitute Speech on Matters of Public Concern

Publicly made allegations that a person or organization is involved in crime generally constitute speech on matters of public concern. *See, e.g.*, *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1298 (11th Cir. 2008) (accusations of "alleged violations of federal gun laws" by gun stores were on "a matter of public concern"). Naturally, this is in particular true of allegations of criminal fraud. *See, e.g.*, *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003) ("fraud in the art market" is "a matter of public concern"); *Silvester v. American Broadcasting Companies, Inc.*, 839 F.2d 1491, 1493 (11th Cir. 1988) ("allegations of corruption in the American jai alai industry" "clearly address[] matters with which the public has a legitimate concern").

Likewise, this Court has stated that "allegations of . . . fraud" within a government program are one of the "indicia of public concern." *Weeks v.*

15

*Bayer*, 246 F.3d 1231, 1233 (9th Cir. 2001). That would surely apply to allegations of tax fraud against the government by a court-appointed bankruptcy trustee. Thus, for instance, *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986), held that an allegation that a private figure "had links to organized crime and used some of those links to influence the State's governmental processes, both legislative and administrative," *id.* at 769, was speech on a matter of public concern, *id.* at 776. Similarly, an allegation that a court-appointed trustee committed a crime as a result of his appointment by the federal government's judicial processes, and the crime defrauded the federal government's executive tax-gathering processes, is speech on a matter of public concern as well.

Indeed, this Court has even applied *Gertz* to consumer complaints about a small business store owner's refusal to give a refund to a customer who had bought an allegedly defective product. *Gardner v. Martino*, 563 F.3d 981, 989 (9th Cir. 2009) (treating such speech as a matter of public concern for purposes of *Gertz* "even assuming [plaintiffs] are private figures"); *see also Flamm*, 201 F.3d at 147, 150 (holding that allegations of a lawyer's supposedly being "an 'ambulance chaser' with interest only in 'slam dunk cases'" were on "a matter of public concern" (some internal quotation marks omitted)). Similarly, this Court has treated speech alleging supposedly excessive

16

rent charged by a mobile home park operator as being part of "public debate," *Manufactured Home Communities, Inc. v. County of San Diego*, 544 F.3d 959, 965 (9th Cir. 2008), and as being on "issues of public concern," *id.* at 966 (Callahan, J., dissenting) ("agree[ing] with the majority" that the claims of plaintiff's "rent increases and operation of the mobile home park were issues of public concern"). *A fortiori*, allegations of outright criminal fraud by a court-appointed trustee would be even more a matter of public concern.

Moreover, the reasons that *Dun & Bradstreet* gave for treating a statement as being on a purely private matter do not apply in this case. Defendant's speech was not "solely in the individual interest of the speaker and its specific business audience," 472 U.S. at 762 (lead opinion)—unlike the credit report in *Dun & Bradstreet*, the speech was not focused on conveying financially valuable information. The speech was spoken to the public at large, rather than, as in *Dun & Bradstreet*, being "available to only five subscribers, who, under the terms of the subscription agreement, could not disseminate it further," *id.* Indeed, the premise of plaintiffs' claims of damage was precisely that the speech was widely available.

The speech was not "like advertising" in being "solely motivated by the desire for profit," *id.*, and thus being "hardy and unlikely to be deterred by

incidental state regulation," *id.* Blog posts such as defendant's are not posted out of a profit motive, and are indeed quite likely to be deterred by the threat of $2.5 million in damages. The *Dun & Bradstreet* opinion noted that the "incremental 'chilling' effect of libel suits" would "be of decreased significance," *id.* at 763, when it comes to credit reports. But the chilling effect of libel suits would be of great significance to bloggers who are posting about what they believe to be tax fraud by others. Nor are statements about possible fraud by third parties as "objectively verifiable," *id.* at 762, as were the claims in *Dun & Bradstreet* about whether a company has filed for bankruptcy.

## 2. Allegations of Fraud by a Court-Appointed Trustee Do Not Lose Their Public Concern Status Even if They Deal with a Specific Incident That Has Not Yet Been Publicly Discussed

Allegations of tax fraud by a court-appointed bankruptcy trustee remain matters of public concern even if they deal with a specific incident, and do not tie the matter to "fraud or corruption in an industry, or in the context of a national or international market," Mar. 27 Op. at 10, 1 ER 10. The speech in *Gardner* and *Manufactured Home Communities* also dealt with such specific incidents, without any attempt to tie the question to a broader national problem. The speech in *Flamm* was contained in a directory of lawyers who had experience in representing women suing for discrimination, but the directory

18

apparently contained only "names, contact information, and a short blurb about each person," 201 F.3d at 146, and the speech that criticized the plaintiff was not connected to any claim about poor service in an "industry" or "in the context of a national or international market." (Though this Court's opinions in *Gardner* and *Manufactured Home Communities* were cited to the district court in the motion for a new trial, the Mar. 27 opinion does not discuss them.)  Likewise, in *Florida Star v. B.J.F.*, 491 U.S. 524 (1989)—a case involving invasion of privacy—the Court concluded that a "news article" about a rape concerned "'a matter of public significance,'" *id.* at 536, even though it consisted of only three sentences, and simply described the incident without expressly tying it to any broader news story. *Id.* at 527.

Likewise, the district court's attempt to limit *Boule* and *Silvester* on the grounds that they involved alleged fraud on a large scale, Mar. 27 Op. at 10, 1 ER 10, is also mistaken. Even a single instance of alleged poor customer service was found to be a matter of "public concern" in *Gardner*, and even entirely lawful rent increases by one small mobile home park were described as a matter of "public concern" in *Manufactured Home Communities*. Even "a single instance of alleged tax fraud," Mar. 27 Op. at 10, 1 ER 10,  is thus likewise a matter of "public concern."

19

Among other reasons, many speakers—whether bloggers, radio talk show hosts, government officials, or traditional newspaper reporters—have access to information only about one incident at a time. A large-scale pattern of misconduct might only be unearthed when someone first publicizes one instance of misconduct. And addressing even a single instance of misconduct may be of importance to the public, especially when that alleged misconduct involves a crime against the public treasury.

All this remains so even if there is no public controversy yet related to the particular incident to which the allegations refer, and the author is only trying to get the public interested. The absence of an existing controversy may be relevant to whether the plaintiff is a "public figure," *see Hutchinson v. Proxmire*, 443 U.S. 111, 134–35 (1979), but not to whether the speech is on a "matter of public concern." *See, e.g.*, *Gardner*, 563 F.3d at 989 (applying *Gertz* even in the absence of any preexisting public controversy about plaintiff's behavior); *Adventure Outdoors*, 552 F.3d at 1298 (treating allegations that plaintiff had acted illegally as being on "a matter of public concern," though there was no indication that there was any preexisting public controversy about these allegations); *Flamm*, 201 F.3d at 149, 150 (holding that defendant's speech was on a matter of public concern, even though the plaintiff was not a public figure, and even though there was no indication

20

that there was any preexisting public controversy about plaintiff). "It is extremely important to keep the 'matters of public concern' standard articulated in *Dun & Bradstreet* separate from the term of art 'public controversy' used as part of the vortex public figure test in *Gertz*. By definition, any person who is a private figure plaintiff *has already failed to voluntarily thrust himself into a public controversy*; otherwise, that plaintiff would be deemed a public figure." 1 RODNEY A. SMOLLA, LAW OF DEFAMATION § 3:20 (2d ed. 2012).

Of course, in all the cases cited above there was preexisting public interest in the *general* topic at hand, such as alleged poor customer service in *Gardner*, alleged illegal conduct by gun stores in *Adventure Outdoors*, or alleged poor lawyer performance in *Flamm*. But the same is true in this case: There is a preexisting public interest in the general topic of alleged fraud in the operation of government programs, including the tax laws and the bankruptcy laws.

The private figure/public concern speech category thus consists largely of cases where there has not yet been enough of a public controversy about the specific incident to make plaintiff into a limited purpose public figure, but where the public could reasonably become concerned about the incident, for instance because it allegedly involves criminal fraud. Indeed, a publication

that is the first to try to alert the public to alleged misconduct may often contribute more to public debate than would publications that come out after the controversy has already broken out, and the public is already interested.

To be sure, both initial allegations and repetition of already publicized allegations could lead to libel liability under the proper First Amendment standards. But there is no reason for treating an allegation that is trying to break the story as being any less protected by the First Amendment than subsequent allegations published after the story has broken.

### C. This Court Has Stated That the *Gertz* Requirement of a Showing of Negligence Applies Even in Private Concern Cases

Even if plaintiffs are found to be private figures, and defendant is found to have spoken on a matter of purely private concern, the jury should have been instructed that it could only hold defendant liable if she was negligent. As this Court stated in *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 694 n.4 (9th Cir. 1998), "when a publication involves a private person and matters of private concern," *Gertz* provides that "[a] private person who is allegedly defamed concerning a matter that is not of public concern need only prove, in addition to the requirements set out by the local jurisdiction, that the defamation was due to the negligence of the defendant." And this was said in a case that involved both non-institutional-media and institutional media de-

22

fendants, and indeed one in which the alleged defamation came in the first instance from the non-institutional-media defendants.

The statement in *Newcombe* appears to be dictum, but it is sound and consistent with *Dun & Bradstreet*. *Dun & Bradstreet* held only "that permitting recovery of presumed and punitive damages in defamation cases absent a showing of 'actual malice' does not violate the First Amendment when the defamatory statements do not involve matters of public concern." 472 U.S. at 763 (opinion of Powell, J.). *Dun & Bradstreet* did not deal with the other half of *Gertz*—the Court's ruling "against strict liability" in requiring that states "not impose liability without fault." 418 U.S. at 347 & n.10.

And this continued rejection by this Court of strict liability even in private concern/private figure defamation cases is also consistent with broader First Amendment precedents. *Gertz*'s limitation on presumed and punitive damages—the matter at issue in *Dun & Bradstreet*—is an exception to the normal First Amendment principle that the protection for speech does not turn on the nature of the liability imposed on the speaker (criminal liability, punitive damages, presumed damages, or compensatory damages). *See, e.g.*, *Smith v. United States*, 431 U.S. 291 (1977) (not accepting Justice Stevens' argument in dissent that obscene material should be free from criminal lia-

23

bility even though it could be restricted in other ways). *Dun & Bradstreet* simply narrowed the scope of this unusual limitation on liability.

But *Gertz*'s prohibition on strict liability in libel cases is not an exception; rather, it is the application of a consistent and broadly applicable First Amendment rule. *See, e.g.*, *Smith v. California*, 361 U.S. 147, 152 (1959) (holding that strict liability is forbidden in criminal obscenity cases); *Manual Enterprises, Inc. v. Day*, 370 U.S. 478, 492–93 (1962) (interpreting civil obscenity statute as forbidding strict liability, because such strict liability would pose serious constitutional problems); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (requiring a highly culpable *mens rea* in incitement cases); *New York v. Ferber*, 458 U.S. 747, 765 (1982) (holding that strict liability is forbidden in child pornography distribution cases); *Virginia v. Black*, 538 U.S. 343, 359 (2003) (requiring a highly culpable *mens rea* in threat cases, as interpreted by *United States v. Bagdasarian*, 652 F.3d 1113, 1116–18 (9th Cir. 2011)); *United States v. United States District Court*, 858 F.2d 534, 541 (9th Cir. 1988) (holding that strict liability is forbidden even in child pornography production cases); *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1035, 1037 (9th Cir. 1991) (rejecting strict liability and even negligence liability for physical injuries caused by incorrect information in a mushroom encyclopedia, because of a concern that such liability would be inconsistent

24

with the First Amendment); *Lerman v. Flynt Distributing Co., Inc.*, 745 F.2d 123, 138 (2d Cir. 1984) (holding that imposing strict liability under the false light invasion of privacy tort would be unconstitutional); *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 611 (6th Cir. 2005) (rejecting strict liability under a city ordinance making it a misdemeanor to participate in a march for which the proper permits have not been gotten).

Moreover, the prohibition on strict liability applies in civil cases, *see, e.g.*, *Manual Enterprises, Inc.*; *Gertz*; *Winter*; *Lerman*, and in cases that involve speech that is not on matters of public concern. The Supreme Court in *Ferber* and this Court in *United States v. United States District Court* concluded that the bar on strict liability applies even to mistakes of age in child pornography cases, despite the likelihood that strict liability in both cases would only chill adult pornography—hardly speech on "matters of public concern." *See City of San Diego v. Roe*, 543 U.S. 77, 84 (2004) (viewing pornographic videos as not being speech on "a matter of public concern"). Likewise, this Court in *Newcombe* was correct in stating that the bar on strict liability is applicable even to libel claims based on allegations on matters of purely private concern. The undue chill on true allegations that would be imposed by strict liability in such libel cases is at least as unconstitutional as

the undue chill on adult pornography that would be imposed by strict liability in child pornography cases.

The district court's Mar. 27 opinion states that Cox's motion for a new trial "rests on the unsupported premise that the Court's cases require some degree of fault in all defamation cases," including "those with no public official, no public figure, and no issue of public concern." Mar. 27 Op. at 23, 1 ER 23. Just to avoid the inference that Cox's claims in that motion were "unsupported" by argument and were thus waived, it should be noted that the motion argued in detail that (1) plaintiffs should be treated as limited purpose public officials, (2) the speech was indeed on a matter of public concern, and (3) even if the speech were about a purely private figure on a matter of private concern, strict liability would still be improper, for the reasons given in this section.

## II. Defendant Is Entitled to a New Trial Under *New York Times v. Sullivan*

Plaintiffs were tantamount to public officials with respect to plaintiff Padrick's activity as bankruptcy trustee, and *New York Times v. Sullivan* therefore mandates that the defendant could be held liable only based on a jury finding of "actual malice." Yet the jury instructions did not require the jury to make such findings; a new trial before a properly instructed jury is therefore warranted.

26

Plaintiff Padrick, a partner in plaintiff Obsidian Finance Group, was not just a lawyer or a businessperson. He was a court-appointed trustee who had the power to exercise court-delegated governmental authority. Bankruptcy trustees perform such "an integral part of the judicial process" that they are even "entitled to derived judicial immunity," *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986); and this reflects the fact that they "serve an important function as officers of the court," *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 559 (Bankr. N.D. Ill. 2000), *aff'd*, 2000 WL 1761020 (N.D. Ill. Nov. 30, 2000), and have extensive powers and responsibilities stemming from their governmental appointment, *see, e.g.*, 11 U.S.C. §§ 704(a), 1106(a).

Plaintiffs were thus in effect akin to temporary public officials, and such court-appointed decisionmakers are treated the same as public figures for purposes of commentary on their behavior. Thus, in *HBO v. Harrison*, 983 S.W.2d 31 (Tex. App. 1998), the court held that the *New York Times v. Sullivan* standard applied in a defamation case brought by a "court-appointed psychologist" who had "the power to determine visitation" between a particular parent and a particular child. *Id.* at 37–38 (italics omitted). And in the process the court relied on *Press, Inc. v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978), which reasoned,

> Any position of employment that carries with it duties and responsibilities affecting the lives, liberty, money or property of a citizen or that may enhance or disrupt his enjoyment of life, his peace and tranquility, or that of his family, is a public office within the meaning of the constitutional privilege.

This reasoning applies fully to the case at bar (though in this instance, as in *Harrison*, to a governmental appointee rather than a governmental employee). A court-appointed bankruptcy trustee has government-delegated "duties and responsibilities affecting the . . . money or property" both of the bankrupt and the creditors.

Likewise, in *Bandelin v. Pietsch*, 563 P.2d 395, 398 (Idaho 1977), the court held that the *New York Times v. Sullivan* standard applied in a defamation case brought by a "court-appointed guardian" who was "a pivotal figure" in the accounting of an estate. The court recognized "that a citizen's participation in community and professional affairs" (such as Elmer Gertz's participation in civic affairs, discussed in *Gertz* ) does not alone make him a public figure. *Id.* And the court recognized that even a person's past holding of a political office does not alone make him a public figure after he has given up that office (which is what had happened in *Bandelin* itself). *Id.*

But the court concluded that when the defendant became a "court-appointed guardian," he became tantamount to a public official for *New York Times v. Sullivan* purposes with respect to allegations based on his exercise

28

of his court-appointed position. *Id.* It was thus Bandelin's role as court-appointed guardian that primarily led to the court's treating Bandelin as a "public figure," *id.*, a status that has the same consequences as public official status for *New York Times v. Sullivan* purposes.

Defendant Cox should similarly have been entitled to the protections of *New York Times v. Sullivan* with regard to her allegations about the actions of plaintiffs in their court-appointed trustee capacity. To be sure, Padrick was not a "government employee[]," Mar. 27 Op. at 9, 1 ER 9, but neither were Bandelin and Harrison, who, like Padrick, were appointed by the court for a particular task. And while Padrick and Obsidian were compensated, pursuant to federal statute, from the bankruptcy estate rather than from the public fisc, *id.*, that ought not affect the analysis: Padrick and Obsidian still derived their legal authority from the government, and were paid from sources designated by the government.

Moreover, the protections of *New York Times v. Sullivan* extend without regard to whether defendant was a member of the institutional media: The Supreme Court has repeatedly applied the *New York Times v. Sullivan* rule to non-media speakers, including the clergymen who wrote the advertisement in *New York Times v. Sullivan* itself, the elected district attorney in *Garrison v. Louisiana*, 379 U.S. 64 (1964), and the arrestee in *Henry v. Collins*, 380

29

U.S. 356 (1965). *See also Wheeler v. Green*, 593 P.2d 777, 785 (Or. 1979) ("We conclude that all defendants, not only those associated with the media, continue to be protected by the *New York Times* rule in cases involving comment upon public officials and public figures.").

In her arguments to the district court, Cox referred to Padrick and Obsidian as "public figures" rather than "public officials." Mar. 27 Op. at 9, 1 ER 9. But while "public figure" and "public official" are sometimes viewed as separate categories, "public figure" is often used as a broad term that also includes public officials. Thus, both Supreme Court opinions and decisions of this Court have referred to *New York Times v. Sullivan* and *Garrison* as dealing with "public figure[s]" even though those two cases technically involved public officials. *See, e.g.*, *Nike, Inc. v. Kasky*, 539 U.S. 654, 664 (2003) (Stevens, J., concurring, joined by Ginsburg, J., and Souter, J.) ("[W]e have provided . . . broad protection for misstatements about public figures that are not animated by malice. See *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964)."); *Florida Star v. B.J.F.,* 491 U.S. 524, 531 n.6 (1989) (describing *Garrison* as involving a government "interest in [a] public figure's reputation"); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986) ("[A]s one might expect given the language of the Court in *New York Times*, a public-figure plaintiff must show the falsity of the statements

30

at issue in order to prevail in a suit for defamation. See *Garrison* v. *Louisiana*, 379 U.S. 64, 74 (1964) (reading *New York Times* for the proposition that 'a public official [is] allowed the civil [defamation] remedy only if he establishes that the utterance was false').”); *Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249, 1251 (9th Cir. 1997) (“Under the rule first announced in *New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964), a public figure can recover damages from a news organization, for harms perpetrated by its reporting, only by proving 'actual malice.'”); *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1406 (9th Cir. 1989) (“*Cf. New York Times Co. v. Sullivan*, 376 U.S. 254, 279–83 (1964) (need to avoid chilling effect on protected expression is satisfied by imposition of 'actual malice' standard in libel cases involving public figures).”), *overruled as to other matters by Armendariz v. Penman*, 75 F.3d 1311, 1324–26 (9th Cir. 1996) (en banc).

### III. Defendant's First Amendment Arguments Have Been Sufficiently Preserved for Review, and in Any Event Defendant Should Prevail Under Plain Error Review

Parties normally must specifically object to a court's proposed jury instructions. Fed. R. Civ. P. 51(c)(1). Yet “when the trial court has rejected plaintiff's posted objection and is aware of the plaintiff's position, further objection by the plaintiff is unnecessary.” *Loya v. Desert Sands Unified*

31

*School Dist.*, 721 F.2d 279, 282 (9th Cir. 1983) (citing *Brown v. Avemco Inv. Corp.*, 603 F.2d 1367, 1371 (9th Cir. 1979)). Thus, when a party has "made explicit objections" to a witness's testimony "in its motion in limine, which the district court denied," "[c]ontemporaneous objection is not required." *Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1062 (9th Cir. 2002)*, amended by* 319 F.3d 1073 (9th Cir. 2003). This rule applies fully to rulings related to jury instructions as well as to decisions related to testimony. *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1189 (9th Cir. 2005).

As *Dorn* made clear, when "the district court was fully informed of [a party's] position on the jury instructions and any further objection would have been superfluous and futile," *id.*, an objection to the jury instructions has not been waived. To be sure, in *Dorn* the district judge also specifically told the party "that he was not inclined to 'rehash' the issue any further," *id.*, an element that is absent here. But no such element was present in *Mukhtar* or *Loya*, and the broader principle behind all three of these cases is that the question is adequately preserved for review when the court was "fully informed" of the party's position.

In this case, the trial took place on Nov. 29, 2011, the day after the Nov. 28, 2011 pretrial conference. At that conference, the court expressly rejected

Cox's argument that she was entitled to First Amendment defenses to her libel claim. Tr. of Nov. 28, 2011 Hearing 7, 2 ER 62. On Nov. 30, 2011, the court released a detailed opinion specifically rejecting Cox's First Amendment argument. The opinion noted that,

> Defendant argues that under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), plaintiffs are "public figures" and as such, they must prove by clear and convincing evidence that defendant published the defamatory statements with "actual malice," meaning with knowledge that the statements were false or with a reckless disregard of whether they were false or not.

Nov. 30 Op. at 5, 1 ER 39. The court then discussed that argument in some detail and rejected it. Likewise, the opinion noted that, "Defendant next argues that she is 'media' and thus, plaintiffs cannot recover damages without proof that defendant was at least negligent and may not recover presumed damages absent proof of 'actual malice.'" *Id.* at 9, 1 ER 43. The court discussed that argument, too, but expressly rejected it as well.

It seems reasonable to assume that the opinion had been drafted in the days shortly before Nov. 30, especially since defendant's written arguments were not presented until Nov. 21, and since the district court orally announced its ruling on Nov. 28. When the court was giving the instructions, the court had just rejected Cox's First Amendment arguments the day before, and was about to release the detailed written analysis of those arguments the day after. The court was thus surely "fully informed of" defend-

33

ant's position that the jury should be instructed about the First Amendment, and "any further objection would have been superfluous and futile." *Dorn*, 397 F.3d at 1189.

In the opinion denying the motion for a new trial, the district judge expressly noted that he "construed [defendant Cox's arguments] to raise" various "First Amendment issues," that "defendant sufficiently raised these issues in her trial memorandum," Mar. 27 Op. at 7, 1 ER 7, and that the judge understood defendant's arguments to be that "she was entitled to certain First Amendment protections, including requiring plaintiffs to establish liability by proving that defendant acted with some degree of fault, whether it be negligence or 'actual malice,'" *id.* at 13, 1 ER 13. The judge expressly stated that he "rejected defendant's arguments . . . that plaintiffs were public figures, and that the blog post referred to a matter of public concern, and thus, that a higher standard of fault was required." *Id.* at 8, 1 ER 8. And he expressly noted that he had instructed defendant "that she could raise her legal arguments . . . in her 'trial memorandum, due on November 22, 2011.'" *Id.* at 3, 1 ER 3 (quoting Order of Nov. 16, 2011, Docket No. 70, 2 ER 83).

Indeed, a *pro se* litigant might well assume (albeit mistakenly) that it is more proper not to tax the court's patience by rehashing an argument that the court had expressly rejected at a hearing the day before. To be sure, *pro se*

34

litigants, like other litigants, bear the burden of informing the court about their positions, so that the court can consider their arguments. But in this instance, Cox had done that in the days immediately before trial. The court was in the process of writing a detailed response to those arguments. Any additional formal objection would not have helped the court, or changed the course of the proceedings.

In his Mar. 27, 2012 opinion, the district judge concluded that even a district court's "'aware[ness] of a party's concerns,'" such that "'further objection would be unavailing,'" is irrelevant unless "'(1) throughout the trial the party argued the disputed matter with the court, (2) it is clear from the record that the court knew the party's grounds for disagreement with the instruction, and (3) the party offered an alternative instruction.'" Mar. 27 Op. at 5–6, 1 ER 5–6 (quoting *Medtronic, Inc. v. White*, 526 F.3d 487, 495 (9th Cir. 2008)). But *Medtronic* was discussing only one situation where "[t]he exception is available" (a situation present in *Medtronic* itself). 526 F.3d at 495. *Medtronic* was not purporting to overrule *Loya*, which reviewed the judge's instructions even though there is no indication that the appellant had "argued the disputed matter" "throughout the trial" or had "offered an alternative instruction." And *Medtronic* was not purporting to overrule *Dorn*, which reviewed the judge's instructions even though there is no indication that the

appellant had "offered an alternative instruction." Under *Dorn*, *Loya*, and *Mukhtar*, defendant's arguments have been sufficiently preserved for review.

In any event, even if—despite *Dorn*, *Loya*, and *Mukhtar*—plain error review is proper, the error in this case was plain. For the reasons described above, there was an error. The error involved a misapplication of First Amendment law that was plain, especially given that the district court was aware of Cox's constitutional arguments against applying strict liability. And the error affected substantial rights, indeed constitutional rights. *See United States v. Sykes*, 658 F.3d 1140, 1149 (9th Cir. 2011) (defining plain error as "(1) error, (2) that is plain, and (3) that affects substantial rights") (internal quotation marks omitted).

In this respect, the case is like *United States v. Garcia-Rivera*, 353 F.3d 788, 792 (9th Cir. 2003), in which this Court concluded that "the district court's jury instructions were unconstitutional" even under a "plain error standard of review." There, the district court instructed the jury that, to convict for a gun possession offense, "'you must unanimously agree that the possession occurred during [time period] (a) above, *or* on (b) *or* (c) above,'" *id.*; but this Court held that this instruction was "fatally ambiguous" and a plain violation of the Sixth Amendment because "[t]he jury could have con-

36

cluded that they were required to decide unanimously only that possession occurred during *any* of the three times enumerated, not that they had to unanimously agree on which one," *id.* Likewise, here the district court instructed the jury that it could hold Cox liable for her speech without requiring any showing of "actual malice" or even negligence, an instruction that plainly violates the First Amendment.

Similarly, in *United States v. Brown*, 223 Fed. Appx. 722, 724 (9th Cir. 2007), this Court reversed a district court's imposition of a probation condition that barred defendant "from wearing clothing or displaying articles that 'may connote affiliation with, or membership in' certain street gangs." This Court held that "it was plain error for the district court to impose such a vague condition implicating First Amendment freedoms," *id.*, even though the defendant did not object at all to the probation condition "when it was announced," *id*. Cox, by contrast, did raise the First Amendment argument in her trial memorandum, and the district court had the opportunity—and used the opportunity—to analyze the First Amendment issues in detail (albeit incorrectly). Reversal, even applying a plain error standard, is thus even more proper here than it was in *Brown*.

## IV. The Defendant Is Entitled to a New Trial, or at Least to Remittitur, Because the Damages Award Was Not Supported by the Evidence

Finally, a new trial—or, at least, remittitur—is also necessary because there is no evidence to support a conclusion that plaintiffs suffered $2.5 million in damages from the particular blog post that formed the basis of this lawsuit, or even that they could be presumed to have suffered such damages. A new trial, or at least remittitur, is proper where the damages award appears to have been based in part on statements that could not form a basis for liability. *See Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 732–33 (9th Cir. 1999) (reversing awards of damages for defamation and a Lanham Act violation because the "awards were based in substantial part on . . . statements that we have found as a matter of law not to be actionable" and "[t]he awards are not segregated in a manner that permits attribution of any portion of the damages to any particular statement"); *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1319 (11th Cir. 1990) (reducing a presumed damages award in light of the fact that the injury to the plaintiff's reputation came in part from sources other than defendant's actionable statements); *see also Oliver v. Burlington Northern, Inc.*, 531 P.2d 272, 275 (Or. 1975) (approving a trial court's decision to order remittitur, or, in the alternative, a new trial, when the judge concluded that there was "no rational basis for the verdict returned").

As the district court held, *Obsidian Finance Group v. Cox*, 812 F. Supp. 2d 1220, 1234–39 (D. Or. 2011), the great majority of defendant's blog posts critical of plaintiffs were protected by the First Amendment; only the December 25, 2010 bankruptcycorruption.com post could form the basis of this defamation lawsuit. But plaintiffs never established that any damage flowed from that potentially constitutionally unprotected post, as opposed to the opinion posts, or the copy of that post that appeared on the obsidianfinancesucks.com site. *See id.* at 1232 (noting that the placement of the post on bankruptcycorruption.com, as opposed to obsidianfinancesucks.com, was part of the basis for the conclusion that the post was not simply constitutionally protected opinion).

Indeed, plaintiffs' witness Patricia Whittington expressly said that she did not know whether any of the damage flowed from that particular post. *See, e.g.*, Trial Tr. 109, 111, 119, 2 ER 55–57. Likewise, plaintiffs' most specific evidence of a lost business opportunity—the inability to get a $10 million bank loan—expressly pointed to a bank employee's reading many posts, which must have included at least some of the constitutional protected opinion: David Brown testified that the bank employee said he was concerned about "various blog postings that he had come across." Trial Tr. 161, 2 ER 58. Plaintiffs' inference that the decline in the advisory business was caused

by defendant's speech specifically rested on posts on multiple Web sites, not limited to bankruptcycorruption.com. Trial Tr. 186, 2 ER 59 (closing argument) ("She posted on numerous websites."). And the jury award is more than twice what even plaintiffs' lawyer argued to the jury was "reasonable compensation": "we'd submit that a reasonable number here is [one] million dollars." Trial Tr. 192, 2 ER 60 (closing argument).

Thus, even if there is a basis for concluding that defendant's posts criticizing plaintiffs inflicted $2.5 million in damage on plaintiffs, there is no basis for the jury's conclusion that this entire sum stemmed from the one post that the district court found to be potentially constitutionally unprotected, as opposed to the many posts that the district court found to be constitutionally protected.

## V. The First Amendment Protections Discussed Above Leave Libel Plaintiffs with Substantial Avenues of Redress for Defamation

Libel plaintiffs retain substantial avenues of redress for defamation, notwithstanding the First Amendment protections discussed in Parts I and II.

First, under *New York Times v. Sullivan*, even public figures such as Padrick and Obsidian suing over matters of public concern can prevail, if they show that the defendant published or is continuing to publish defamatory statements with knowledge that the statements are false, or with reckless disregard of the known likelihood that they are false.

40

Second, under *Gertz*, private figures suing over matters of public concern can collect provable compensatory damages based on a mere showing of negligence.

Third, prevailing libel plaintiffs may be able to get an injunction barring further display of a statement that has been found at trial to be libelous. This Court has favorably cited a Third Circuit en banc opinion as holding that "an injunction against future speech ceases to be an unconstitutional prior restraint once it is determined that the enjoined speech is libelous and beyond the First Amendment's protections." *Overstreet v. United Brotherhood of Carpenters & Joiners, Local Union No. 1506*, 409 F.3d 1199, 1218 (9th Cir. 2005) (emphasis omitted) (summarizing *Kramer v. Thompson*, 947 F.2d 666, 675–76 (3d Cir. 1991) (en banc)). Other courts have held that such injunctions are permissible, *see, e.g.*, *Balboa Island Village Inn, Inc. v. Lemen*, 156 P.3d 339, 343–51 (Cal. 2007) (so holding, and citing other state cases), though the matter is not settled, *see, e.g.*, *Willing v. Mazzocone*, 393 A.2d 1155, 1157–1158 (Pa. 1978) (concluding that the Pennsylvania Constitution forbids such an injunction); *Tory v. Cochran*, 544 U.S. 734, 737 (2005) (noting but not resolving the uncertainty).

Fourth, if it can be proved that a speaker is posting allegations simply to extort money from the target, a criminal prosecution for extortion, coercion,

41

or blackmail (or an attempt to commit such crimes) may be possible. *See, e.g.*, OR. REV. STAT. § 163.275 (defining the crime of "coercion," which covers blackmail).

Fifth, a state may choose to recognize a tort cause of action for civil extortion. *See, e.g.*, *Metabolic Research, Inc. v. Ferrell*, 2012 WL 2215834, at *2 (9th Cir. June 18, 2012) (noting that plaintiff had pled such a claim); *Menken v. Emm*, 503 F.3d 1050, 1054 (9th Cir. 2007) (likewise); *Flatley v. Mauro*, 139 P.3d 2, 5 (Cal. 2006) (likewise); OR. REV. STAT. § 166.715 (listing violations of OR. REV. STAT. § 163.275 as possible predicates for a civil racketeering lawsuit). In this case, however, plaintiffs did not plead and prove any such claim.

What First Amendment law does not allow is for plaintiffs to short-circuit the required showing of "actual malice" (or, for private-figure plaintiffs claiming provable compensatory damages, negligence), and impose strict liability on speakers. A properly instructed jury might be able to impose liability on Cox based on her blog post. But the jury in this case was not properly instructed.

## CONCLUSION

Defendant Cox is entitled to a new trial, in which the jury should be instructed under the *New York Times v. Sullivan* standard, because Cox's

statements were on a matter of public concern and said about a limited-purpose public official.

In the alternative, the jury at the new trial should at least be instructed under the *Gertz* standard, because (a) Cox's statements were on a matter of public concern, (b) whether or not Cox was a member of the institutional media is irrelevant, and (c) strict liability in defamation cases is improper even if the statements were on a matter of private concern.

Finally, defendant Cox is at least entitled to a new trial at which the jury decides the damages award based solely on the harm flowing from the statement that has been found to be potentially defamatory.

For these reasons, the district court's denial of the motion for a new trial should be reversed.

Respectfully submitted,

s/ Eugene Volokh
Eugene Volokh

Counsel for Defendant-Appellant and
Cross-Appellee Crystal Cox

October 10, 2012

43

## STATEMENT OF RELATED CASES

Cox states that there are no cases pending in this Circuit that satisfy the definition of "related case" under Ninth Circuit Rule 28-2.6.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because the brief contains 9,915 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman typeface.

Dated: October 10, 2012

s/ Eugene Volokh
Eugene Volokh

Counsel for Defendant-Appellant and Cross-Appellee Crystal Cox

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Opening Brief of Defendant-Appellant and Cross-Appellee Crystal Cox with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 10, 2012. All participants in the case are registered CM/ECF users.

Dated: October 10, 2012

<div style="margin-left:40%">

s/ Eugene Volokh
Eugene Volokh

Counsel for Defendant-Appellant and
Cross-Appellee Crystal Cox

</div>